Lynn BOWLIN, Appellant,

v.

Charles THOMAS et al., Appellees.

Court of Appeals of Kentucky.

Jan. 21, 1977.

John J. Slattery, Jr., Louisville, John A. Gregory, Jr., Hughes & Gregory, Murray, for appellant.

F. C. Bryan, Mount Sterling, Hunter B. Whitesell, Johnson & Whitesell, Fulton, for appellees.

Before HAYES, LESTER and PARK, JJ.

PARK, Judge.

The plaintiff-appellant, Lynn Bowlin, brought suit in the Fulton Circuit Court against the defendants-appellees, the Fulton City Board of Education, the individual members of the board, and the superintendent of the Fulton City Schools. Bowlin claimed that the school board wrongfully failed to renew his teaching contract in the Fulton City School System for the 1974–75 school year. From a judgment dismissing his complaint, Bowlin appeals.

The case was initially submitted to the circuit court upon a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. However, the parties filed exhibits and affidavits in support of their respective positions. Consequently, the motion to dismiss should be treated as a motion for summary judgment. CR 12.02. In reviewing the action of the circuit court, all doubts must be resolved in favor of Bowlin.

Bowlin was employed as a teacher in the Fulton City School System for the 1973–74 school year. Under his written contract with the school board, Bowlin was to teach five classes, including one designated as a planning period. During the 1973–74 school year, Bowlin received a salary of $5,376.00, or eighty per cent of the base salary of $6,720.00 per year. Not being eligible for a continuing contract pursuant to KRS 161.-740, Bowlin was employed under a limited contract.

With respect to re-employment of non-tenured teachers under limited contracts, KRS 161.750(2) provided:

"Any teacher employed under a limited contract * * * shall at the expiration of such limited contract be deemed re-employed * * * for the succeeding school year at the same salary plus any increment or decrease as provided by the salary schedule, unless the employing board shall give such teacher written notice on or before the fifteenth day of May of its intention not to re-employ him; upon request by the teacher, such written notice shall contain the specific reason or reasons why the teacher is not being re-employed. * * * "

Prior to May 13, 1974, the school superintendent verbally informed Bowlin that his salary would be reduced to seventy per cent of base salary by the elimination of the planning period. Bowlin told the school superintendent that he could not accept re-employment unless he received the same pay as received the prior year.

On May 14, 1974, the school superintendent wrote Bowlin a letter which stated:

"The Fulton City Board of Education met May 13, 1974 and instructed me to inform you, that due to loss of students which leads to a loss of revenue, your time will be cut from .8 per day to .7 per day.

"At the present time we are using several teachers over our allotment by the State Department of Education, and this means that we will not replace some teachers who are leaving the Fulton City School System.

"Since you feel that you can not work less than .8 of a day which you indicated on your application form for re-employment, the Fulton City Board of Education wishes to enform [sic] you that it can not renew your contract for the school year of 1974–75, due to the above reasons."

Bowlin asserts that the reasons given in the school superintendent's letter are false. Specifically, Bowlin says that there was no loss of students which led to a decrease in revenue necessitating a reduction in the number of teachers in the Fulton City School System.

■ At the onset, Bowlin is met with the argument that he never made a request to the board that he be given the specific reasons for his not being re-employed. This argument by the defendants-appellees is without merit. Bowlin was not required to go through the useless act of requesting the board to give him specific reasons for his not being re-employed when the board had already stated its reasons in the letter of May 14, 1974.

It is Bowlin's position that he is entitled to a hearing in circuit court in order to prove the falsity of the reasons given in the letter of May 14, 1974. If the reasons given for not re-employing him were false, Bowlin argues that the board acted arbitrarily in failing to re-employ him. Because the board's actions were arbitrary, Bowlin asserts that he is entitled to a judgment reinstating him as a teacher in the Fulton City School System.

Prior to 1970, there was no requirement that a school board give any reasons in its notice that it was not re-employing a non-tenured teacher. In that year, the statute was amended by adding the following provision:

"Upon request by the teacher, such written notice shall contain the specific reason or reasons why the teacher is not being reemployed." 1970 Kentucky Acts, Chapter 169 § 1.

This amendment clearly requires a statement, if requested, from the school board to the non-tenured teacher giving the reasons why he is not being re-employed. How-

ever, the important question is whether the teacher has a right to contest the reasons given by the school board for not re-employing the teacher.

If Bowlin had been a tenured teacher serving under a continuing contract, the school board could have terminated his contract only for certain statutory causes. A tenured teacher has the right to contest the truth of the grounds alleged for termination in a hearing before the school board and, if unsuccessful, in a trial de novo before the circuit court. KRS 161.790; *Osborne v. Bullitt County Board of Education,* Ky., 415 S.W.2d 607 (1967). Bowlin contends that KRS 161.750 as amended in 1970 grants the non-tenured teacher a right to a circuit court hearing to contest the reasons given for failing to re-employ him. This would place the non-tenured teacher in almost the same position occupied by a tenured teacher under KRS 161.790. The language of the 1970 amendment does not expressly so provide. Nor does the language of the 1970 amendment to KRS 161.-750 justify a strained construction of the statute based upon the assumption that the legislature intended to raise the rights of the non-tenured teacher to the level of the tenured teacher.

Bowlin relies upon the decision of the Illinois Supreme Court in *Donahoo v. Board of Education of School District No. 303,* 413 Ill. 422, 109 N.E.2d 787 (1952). The Illinois statute under consideration provided:

"Any teacher who has been employed in any district as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least sixty (60) days before the end of such period."

The local school board notified the teacher in question that his contract would not be renewed, but the notice contained no reasons for the teacher's dismissal. The Illinois Supreme Court held that the statute was mandatory and that the notice to the teacher that his contract would not be re-newed was ineffective unless the notice contained a statement of reasons. The Illinois court did not hold that a teacher would have the right to contest the reasons given by the board of education. The Illinois court did no more than hold that a dismissal was ineffective if the board failed to give *any* specific reasons for its action.

The *Donahoo* case can be easily distinguished. First, the language of the Kentucky and Illinois statutes is substantially different. Although KRS 161.750 was subsequently amended by the 1976 legislature, in 1974 a notice of a board's intention not to re-employ a non-tenured teacher was not required to be accompanied by a statement of reasons. A statement of reasons was required only if requested by the teacher. Second, the board did in fact provide Bowlin with a statement of reasons for his non re-employment.

Under the Fourteenth Amendment to the Constitution of the United States, Bowlin does not have a constitutional right to a statement of the reasons for the school board's decision not to re-hire him for the 1974–75 school year or a right to a hearing to contest that decision. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the *Roth* case, the Supreme Court held that Wisconsin State University—Oshkosh did not have to provide a non-tenured professor with reasons and a hearing before deciding not to re-hire him for another year.

Since Bowlin's complaint was dismissed by summary judgment, it must be assumed that the reasons given by the board in the letter of May 14, 1974, were in fact false. However, it does not follow that any constitutionally protected interest of Bowlin was impaired solely because the reasons given in the letter of May 14, 1974, were incorrect. In *Bishop v. Wood,* 425 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684, (1976), the Supreme Court held that the Fourteenth Amendment did not grant a North Carolina policeman a right to a hearing to determine the sufficiency of the reasons given for his discharge. Under the city ordinance governing the policeman's

employment, the policeman had no right to continued employment. His employment could be terminated at any time so long as he was given a written notice setting forth the reasons for his discharge. The Supreme Court held that it was immaterial whether the city manager was mistaken in the reasons given for the policeman's discharge or whether the city manager deliberately lied. As the policeman's employment was terminable at will, there was no constitutional requirement that the reasons given for his termination be accurate or correct.

Citing certain language from the opinion in *Johnson v. Dixon,* Ky., 501 S.W.2d 256 (1973), Bowlin asserts that the school board could refuse to re-employ him only upon a statement of reasons "showing the exercise of a fair discretion." From this statement, Bowlin argues that he should be entitled to a hearing in circuit court in order that he may prove that the stated reasons are false and, therefore, not the exercise of "fair discretion." However, the language quoted from *Johnson v. Dixon* must not be quoted out of context. In that case, the Court of Appeals held that the school board could not base its decision not to re-employ a non-tenured teacher solely on the ground that the teacher was not a native of Hart County. A classification based solely on place of birth was held to be "inherently suspect" and therefore unconstitutional unless the school board could show "a compelling governmental interest" for the rule. The Court of Appeals went on to state that the non-tenured teacher was not automatically entitled to a judgment that he be re-employed. As a non-tenured teacher, his future employment would continue to be subject to determination "by a fair, non-discriminatory decision of the board of education." When the Court of Appeals referred to the exercise of a "fair discretion" by the board of education, the Court of Appeals was only saying that re-employment could not be denied "solely on the basis of an unconstitutionally discriminatory classification."

■ There is no allegation in Bowlin's complaint nor any suggestion in the brief or oral argument that Bowlin's employment was terminated because of some constitutionally prohibited reason. The decision not to re-employ Bowlin was not based upon Bowlin's race, sex, religion or place of birth. See, e. g., *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971); *Sugarman v. Dougall,* 413 U.S. 364, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973); *Rawlings v. Butler,* Ky., 290 S.W.2d 801, 60 A.L.R.2d 285 (1956); *Johnson v. Dixon, supra.* Nor is there any allegation that the failure to re-employ Bowlin was based upon his exercise of the right of free speech or because of his political activities. See, e. g., *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In the absence of any allegation that Bowlin's termination was based upon an "inherently suspect" classification, he is not entitled to a hearing at which the school board could be required to show "a compelling governmental interest" for failing to re-employ Bowlin.

■ Bowlin argues that the board's failure to re-hire him constituted arbitrary action in violation of section two of the Kentucky Constitution. Bowlin cites the decision of the Court of Appeals in *Snapp v. Deskins,* Ky., 450 S.W.2d 246 (1970), which held that the work assignment given a teacher by a school board could be arbitrary in violation of section two of the Kentucky Constitution. However, in that case, the school board had already re-employed all of the teachers in question before making the work assignments which were deemed arbitrary. In this case, the school board made the decision not to re-employ Bowlin. Bowlin's situation is analogous to that of the Wisconsin professor in *Board of Regents v. Roth, supra.* So long as it is not based upon a constitutionally impermissible reason, a decision to terminate the employment of a public officer or employee does not raise an issue under section two of the Kentucky Constitution. See *Johnson v. Laffoon,* 257 Ky. 156, 77 S.W.2d 345 (1935).

Bowlin also asserts that the attempt of the school board to reduce his annual salary was in violation of KRS 161.760(1) which provides:

"Each board of education shall cause notice to be given annually not later than July 1 to each teacher who holds a contract valid for the succeeding school year, stating the best estimate as to the salary to be paid such teacher during such year. Such salary shall not be lower than the salary paid during the preceding school year unless such reduction be a part of a uniform plan affecting the entire district, or unless there is a reduction or elimination of extra service, administrative and/or supervisory duties and responsibilities of the teacher or other certified personnel. Upon requests by the teacher, any reduction or elimination of extra service, administrative and/or supervisory duties and responsibilities shall be accompanied by a written statement of the specific reason or reasons for such reduction or elimination. * * *"

Bowlin asserts that the reduction in his salary was not a part of a uniform plan affecting the entire district and that there was to be no real reduction in his teaching duties and responsibilities.

 The appellees contend that KRS 161.760 only applies to tenured teachers and has no application to a non-tenured teacher holding only a limited contract. Bowlin argues that KRS 161.760 applies to both tenured and non-tenured teachers. Neither party is wholly correct. If the school board had re-employed Bowlin for the 1974–75 school year, then he would have been entitled to the protection of KRS 161.760. See *Snapp v. Deskins,* supra. If Bowlin had not received a written notice prior to May 15th that he would not be re-employed, then he would have had a contract valid for the succeeding school year as provided by KRS 161.750(2). Having a contract valid for the 1974–75 school year, Bowlin's salary could not have been reduced except pursuant to KRS 161.760. However, the school board did effectively terminate Bowlin's employment in conformity with KRS 161.750(2). Not having a valid contract for the succeeding school year, Bowlin was not entitled to the protections of KRS 161.760.

This court concludes that the circuit court did not err in dismissing Bowlin's complaint. The judgment is affirmed.

All concur.